# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT KONIKOWSKI and, <br> TARA KONIKOWSKI, <br> husband and wife, <br><br> Plaintiffs, <br><br> v. <br><br> SPECIALTY RETAILERS, INC. and <br> MAVERICK COMPANIES, INC. and <br> SUNRISE OF MYRTLE BEACH, <br> INC. D/B/A SUNRISE CARPETS, <br><br> Defendants. | CIVIL ACTION NO. 3:15-cv-02001 <br><br> (SAPORITO, M.J.) |

## MEMORANDUM

### *I.  Background and Facts*

This diversity action arises out of a fall on November 10, 2014, where plaintiff Robert Konikowski alleged that he tripped over a portion of bundled or bunched-up carpeting on the floor of the Peebles department store in Matamoras, Pennsylvania. The plaintiffs originally sued Peebles, Inc., Stage Stores, Inc., and Specialty Retailers (TX) LP. In their first amended complaint, the plaintiff sued only Specialty Retailers, Inc. and Maverick Companies, Inc. In the amended Complaint, the plaintiffs alleged that Maverick negligently installed the

carpeting in the Peebles department store.  Maverick, in its answer cross-claimed against Specialty Retailers alleging that it is solely liable on the plaintiffs cause of action, or is liable to or with Maverick, or liable for contribution or indemnity.  Specialty Retailers denied that it is liable.

Thereafter, in a second amended complaint, the plaintiffs also named Sunrise of Myrtle Beach, Inc. d/b/a Sunrise Carpets as a defendant and alleged that Maverick and Sunrise Carpets were responsible for selection and type, and quality and installation of the carpeting at the Peebles department store.  Maverick cross-claimed Specialty Retailers and Sunrise Carpets.  Specialty Retailers cross-claimed against Maverick and Sunrise Carpets, both of which denied any liability.

The plaintiffs' claims were settled by Sunrise Carpets and Maverick each of whom contributed an equal amount.  Specialty Retailers made no contribution toward settlement, but it was nevertheless included as a "Released Party" under the release.

For purposes of resolving the instant motion, Specialty Retailers entered into an agreement with Maverick for what we presume to be

improvements to the Peebles department store. The selection and installation of the carpeting was part of the scope of the work. The record does not flesh-out the nature of the work. The parties do not go into detail regarding it, other than the plaintiffs' allegation that Maverick and/or Sunrise Carpets were responsible for selection, type, quality, and installation of the carpeting in the store. (Doc. 28 ¶ 24).

In its brief in support of the motion for summary judgment, Specialty Retailers maintains that the carpet was installed by Sunrise Carpets under a subcontract between it and Maverick. (Doc. 57, at 2). Also, in its answers to plaintiffs' interrogatories, Sunrise Carpets stated that it installed the carpet beginning September 3, 2014, through September 9, 2014. (Doc. 57-2, at 17). Maverick also stated that Sunrise Carpets installed the carpeting in its answers to interrogatories. (Doc. 57-3, at 17). Finally, Maverick issued a notice to proceed to Sunrise Carpets on July 25, 2014, to provide all required labor, material, and equipment necessary to complete the flooring scope of work from the drawings provided by Store Planning, Inc. (Doc. 57-1). In the contract, Store Planning, Inc. is listed as the architect. (Doc. 35-1, at 1). We have not been provided with the contract documents and

specifications other than the AIA Document A107-2007 which incorporates the contract documents.

Specialty Retailers filed a motion for summary judgment (Doc. 56) against Maverick based upon the indemnification provision in the addendum to the contact which is before us for disposition. The subject parties have briefed the issue and for the reasons that follow, we will deny the motion.

## II.  *Legal Standards*

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true."

*Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

## III. Discussion

In the contract entered into between the parties, they agreed that the contract "shall be governed by the law of the place where the Project is located . . . ." (Doc. 35-1, at 18). The project was located in Matamoras, Pennsylvania. Thus, Pennsylvania law applies.

An agreement to indemnify is "an obligation resting upon one person to make good a loss which another has incurred or may incur by acting at the request of the former, or for the former's benefit." *Potts v. Dow Chemical Co.*, 272 Pa.Super. 323, 415 A.2d 1220, 1221 (1980). "Indemnity agreements are to be narrowly interpreted in light of the

5

parties' intentions as evidenced by the entire contract." *Consolidated Rail Corp. v. Delaware River Port. Auth.*, 880 A.2d 628, 632 (Pa.Super.2005), appeal denied, 587 Pa. 714, 898 A.2d 1071 (2006). "In interpreting the scope of an indemnity clause, the court must consider the four corners of the document and its surrounding circumstances." *Widmer Engineering v. Dufalla*, 837 A.2d 459, 472 (Pa.Super.2003), appeal denied, 837 A.2d 459 (2003). To establish the right to indemnification, the indemnitee must establish:

> the scope of the indemnification agreement; the nature of the underlying claim; its coverage by the indemnification agreement; the reasonableness of the alleged expenses; and, where the underlying action is settled rather than resolved by payment of a judgment, the validity of the underlying claim and the reasonableness of the settlement.

*McClure v. Deerland Corp.*, 401 Pa.Super. 226, 585 A.2d 19, 22 (1991).

Here, Maverick argues that § 9.15.1 of the contract contains the applicable indemnification provision. As Specialty Retailers correctly points out, that provision was deleted in its entirety and replaced by a subsequent indemnity provision contained in an addendum. (Doc. 35-1, at 26). That provision in its entirety is set out as follows:

6

CONTRACTOR HEREBY INDEMNIFIES, DEFENDS AND HOLDS OWNER, ITS PARENTS, SUBSIDIARIES, AFFILIATES, AGENTS, EMPLOYEES, OFFICERS, PRINCIPALS, DIRECTORS, PARTNERS, OFFICERS, CONTRACTORS, VISITORS, THE ARCHITECT, ARCHITECTS CONSULTANTS, AGENTS AND EMPLOYEES (COLLECTIVELY, THE "OWNER PARTIES") HARMLESS FROM AND AGAINST ANY AND ALL LIABILITIES, CODE VIOLATIONS, PENALTIES, CLAIMS, LOSSES, CAUSES OF ACTION, DAMAGES, PENALTIES, FINES, COSTS AND EXPENSES (INCLUDING WITHOUT LIMITATION ATTORNEYS FEES AND COURT COSTS) THAT THE OWNER OR THE OWNER PARTIES, OR ANY OF THEM, MAY INCUR OR SUFFER (WHETHER FOR DAMAGE OR DESTRUCTION TO PROPERTY, OR DEATH OR INJURY TO PERSON, OR ANY PERSONAL INJURY), ARISING OUT OF OR RELATED IN ANY WAY TO: (I) ANY BREACH OF CONTRACTOR UNDER THE CONTRACT, (II) ANY DEFECT OR DEFICIENCY IN THE WORK, (III) ANY ACT OR OMISSION CONSTITUTING THE ALLEGED NEGLIGENCE OF THE CONTRACTOR, ITS EMPLOYEES, AGENTS OR SUBCONTRACTORS, (IV) ANY LIEN OR CLAIM, OR (V) PERFORMANCE OF THE WORK. THIS INDEMNITY SHALL SURVIVE THE EXPIRATION OR EARLIER TERMINATION OF THIS CONTRACT AND THE FINAL COMPLETION OF THE WORK. THIS INDEMNITY SHALL COVER ANY OF THE FOREGOING LIABILITIES, CLAIMS, CAUSES OF ACTION, ETC. EVEN TO THE EXTENT CAUSED BY THE CONCURRENT

NEGLIGENCE OF THE OWNER OR THE OWNER PARTIES. IN DEFENDING ANY ACTION INDEMNIFIED BY THIS SECTION CONTRACTOR SHALL HAVE THE OPTION TO SELECT COUNSEL FOR SUCH DEFENSE AND TO CONTROL ITS DEFENSE.

*Id.*

Here, Specialty Retailers is only seeking recovery of attorneys' fees and costs incurred in having to defend itself in this action. (Doc. 62, at 5). Because Maverick is relying upon the deleted section 9.15.1, Specialty Retailers submits that Maverick "did not controvert any of the material facts set forth in the Local Rule 56.1 Statement of Material facts filed by Defendant . . . ." (*Id.* at 1). The docket does not reflect a filing of a statement of material facts by Specialty Retailers. Nevertheless, we have reviewed the submissions of the parties and resolving all reasonable inferences in favor of Maverick, the non-moving party, we find that there exists genuine issues of material fact.

Here, it is Specialty Retailers' burden to establish (1) the scope of the indemnification agreement; (2) the nature of the underlying claim; (3) the underlying claim's coverage by the indemnification provision, (4) the reasonableness of the alleged expenses; and (5) as the underlying claim was settled, rather than resolved by payment of a judgment, the

8

validity of the underlying claim and the reasonableness of the settlement.

Specialty Retailers does not establish the scope of the indemnification agreement other than to state that the applicable provision is contained in the Addendum. (Doc. 57, at 5). A review of the indemnification provision sets forth five circumstances upon which Maverick was required to indemnify Specialty Retailers relating to injury to person: (1) any breach by Maverick of the contract--Specialty Retailers has neither alleged nor proved any breach of the subject contract by Maverick; (2) any defect or deficiency in the work--Specialty Retailers has neither alleged nor proved any defect or deficiency in the work other than to rely upon plaintiffs' allegations in the second amended complaint which have been refuted by employees of Peebles; (3) any act or omission constituting the alleged negligence of Maverick, its employees, agents, or subcontractors--this is covered by our analysis set forth in (2) immediately above; (4) any lien or claim--there was no lien, but this case may be considered a claim; and (5) performance of the work--there are no allegations regarding the performance of work.

9

Specialty Retailers has set out the nature of the claim, i.e. a trip and fall on alleged bundled or bunched-up carpeting based upon the plaintiffs' allegations. However, the manager of the store, Kelly Davis, testified that no one told her that there was any bunching of the carpeting in the area of the fall. (Doc. 61-3, at 7-9). On the day of the fall, she walked the area where the fall occurred and did not observe any bunching of the carpet. (*Id.* at 12). Nor did she feel that the carpeting required to be fixed. (*Id.* at 13). Further, another employee of the store, Tina Belcher, testified that on the day of the fall, she had no problem walking in the carpeted area nor did she observe any bunched-up carpeting. (Doc. 61-4, at 4-5). Neither did the plaintiff nor his mother point out any area where the carpeting was bunched-up. (*Id.*). None of the employees of the store told her that the carpet was bunched-up. (*Id. a*t 6). She also stated that on the day of the fall, she did not find anything that caused a tripping hazard. (*Id. a*t 7-8).

Specialty Retailers has not provided any alleged expenses to determine their reasonableness. As to the validity of the underlying claim, the employees of the store testified there were no defects of the carpet that could have caused the fall. The suit was settled for $25,000

and the alleged injuries sustained by Robert Konikowski appear to be significant, i.e. fractured left femur requiring surgery, permanent scarring, residual limp, disfigurement, severe sepsis, in the right three middle toes, amputation of the toes as a result of the infection, and aggravation of pre-existing pulmonary and coronary medical conditions. (Doc. 28, ¶ 18).  Perhaps the relatively modest amount of the settlement in comparison to the alleged injuries was reflective of potential proof problems in the event the case went to trial and thus, the settlement can be deemed reasonable.

Under all of these circumstances, there exist genuine issues of material fact which preclude the entry of summary judgment.  An appropriate order follows.

*s/ Joseph F. Saporito, Jr.*<br>JOSEPH F. SAPORITO, JR.<br>U.S. MAGISTRATE JUDGE

Dated:  September 26, 2018